# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **JAMES JAYLEN SIMMONS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **NO. 3:20-cv-01019** |
| | ) | |
| **RAYMOND BYRD, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

James Jaylen Simmons ("Petitioner") is a state prisoner incarcerated in Trousdale Turner Correctional Complex in Hartsville, Tennessee. In 2017, he pleaded guilty to second-degree murder, with an agreed sentence of forty years. Proceeding pro se, he now challenges his conviction and sentence, and seeks a writ of habeas corpus, under 28 U.S.C. § 2254 (Doc. No. 1).[1] After careful review of the record and the applicable law, the Court finds that an evidentiary hearing is unnecessary to resolve Petitioner's claims. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a federal court is not required to hold an evidentiary hearing."). For the reasons explained

---

[1] The record shows that Petitioner filed three petitions with the Court (Doc. Nos. 1, 8, 10). The Court has reviewed his petitions and accompanying memoranda, and in doing so, the Court is mindful that it must liberally construe his filings because he is proceeding pro se. See Franklin v. Rose, 765 F.2d 82, 85 (6th Cir. 1965) ("The allegations of a pro se habeas petition, though vague and conclusory, are entitled to liberal construction[,]" which "requires active interpretation in some cases[.]") (internal quotation marks and citations omitted)). However, his most recent petitions and memoranda, (see Doc. Nos. 8, 10), appear to be duplicative of his earliest petition and memorandum filed in the record at Doc. No. 1 and Doc. No. 2, respectively. For the Court's ease and for consistency, it will simply cite his petition as "(Doc. No. 1)" and accompanying memorandum as "(Doc. No. 2)" when referring to those filings in this Memorandum Opinion.

below, Petitioner is not entitled to relief under § 2254, and his Petition (Doc. No. 1) is therefore

**DENIED**.

## I.     BACKGROUND

In 2015, a grand jury, impaneled in Davidson County, indicted Petitioner, along with his

co-defendants Joshua Allen Smith and Xavier Jamal Young, for the first-degree premeditated

murder, first-degree felony murder, and especially aggravated robbery of Luis A. Diaz. (Doc. No.

13-1 at 3–6). On March 2, 2017, Petitioner, in Davidson County Criminal Court, entered into a

plea agreement with the State. (Id. at 7–10; see Doc. No. 13-3 (Plea Hr'g Tr. Mar. 2, 2017)).[2]

Pursuant to that agreement, Petitioner pleaded guilty to the reduced charge of second-degree

murder. (Doc. No. 13-1 at 7–9). The trial court entered the parties' plea agreement and sentenced

Petitioner to the agreed on forty-year sentence "at 100 percent[,]" in accordance with Hicks v.

State, 945 S.W.2d 706 (Tenn. 1997).[3] (Doc. No. 13-3 at 9:1–2; see Doc. No. 13-1 at 7). In

addition, the trial court, as part of the plea agreement, dismissed Petitioner's remaining charges of

first-degree felony murder and especially aggravated robbery. (Doc. No. 13-1 at 7).

On February 6, 2018, Petitioner, through counsel, timely filed a petition for post-conviction

relief with the trial court. (Id. at 12–24); see Tenn. Code Ann. § 40-30-102(a) (setting a one-year

statute of limitations period for post-conviction relief). In his petition, he argued that counsel

rendered ineffective assistance of counsel, and he raised the following, five sub-claims in support

---

[2] The record shows that Nick McGregor, Esq., represented Petitioner during the plea hearing, and he negotiated plea agreements with the State. (Doc. No. 13-1 at 14).

[3] In Hicks, 945 S.W.2d at 706, the defendant pleaded guilty to voluntary manslaughter, in exchange for the State's recommendation of a fifty-year sentence as a Range II offender. Id. Not unlike Petitioner herein, the defendant agreed to the sentence even though he lacked the criminal history to justify sentencing within Range II. Id. at 706–07. The defendant appealed his sentence on the grounds that it was "illegal." Id. at 707. The state supreme court disagreed that his sentence was illegal and held that "a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." Id. at 709.

2

of his overarching ineffective-of-assistance-of-counsel claim: counsel was ineffective for failing to (1) advise him "on the nature and consequences of his guilty plea so that the plea was made intelligently and voluntarily" (Doc. No. 13-1 at 18); (2) investigate and prepare the underlying facts of the case (id. at 19); (3) investigate "the possible impeachment of the co-defendants" (id. at 20); (4) challenge the suppression of Petitioner's statement to police (id. at 21); (5) communicate with Petitioner all possible defense if the case proceeded to trial (id.); and (6) provide all discovery for Petitioner's review (id.). After an evidentiary hearing, the trial court, on May 3, 2019, denied Petitioner's petition for post-conviction relief. (Id. at 43).

Petitioner appealed the trial court's denial of his petition for post-conviction relief. (See Doc. No. 13-1 at 1). The Tennessee Court of Criminal Appeals ("TCCA") affirmed the trial court's decision. Simmons v. State, No. M2019-00823-CCA-R3-PC, 2020 WL 2844526, at *9 (Tenn. Crim. App. June 1, 2020). On October 13, 2020, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. (Doc. No. 13-9 at 1); see Tenn. R. App. P. 11(a) ("An appeal by permission may be taken from a final decision of the Court of Appeals or Court of Criminal Appeals to the Supreme Court only on application and in the discretion of the Supreme Court.").

Petitioner, under 28 U.S.C. § 2254, now seeks a writ of habeas corpus from this Court, claiming that his conviction and sentence are unconstitutional because: (1) his attorney rendered ineffective assistance of counsel "prior to and during the guilty plea," in violation of his Sixth and Fourteenth Amendments of the United States Constitution, (Doc. No. 2 at 5–11), and (2) his guilty plea was "entered involuntarily, unknowingly and unintelligently," in violation of his due process rights under the Fourteenth Amendment, (id. at 12). Pursuant to Rule 5 of the Rules Governing

§ 2254 Cases in the United States District Courts, as well this Court's April 12, 2021 Order, (Doc. No. 12), Respondent filed copies of the state-court record and its Answer, (Doc. Nos. 13, 14).[4]

## II.      STANDARD OF REVIEW

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which allows a federal court to grant a writ of habeas corpus to a state prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA applies to petitions that a state prisoner files after April 24, 1996—the AEDPA's effective date. Woodford v. Garceau, 538 U.S. 202, 204, 207 (2003) ("[A]n application filed after AEDPA's effective date should be reviewed under AEDPA[.]"). Because Petitioner filed his petition for a writ of habeas corpus in this Court well after the AEDPA's effective date (see Doc. No. 1), it governs Petitioner's petition. See Haliym v. Mitchell, 492 F.3d 680, 690–91 (6th Cir. 2007) ("Because this case involves a petition for habeas corpus filed after the effective date of the Antiterrorism Death Penalty Act . . . AEDPA governs this Court's review.") (citation omitted); Powers v. Wingard, 3 F. App'x 290, 292 (6th Cir. 2001) ("[T]he AEDPA applies to this case because Powers filed his petition for a writ of habeas corpus after the Act's effective date of April 24, 1996.") (citations omitted). As discussed in more detail below, the AEDPA restricts a federal court's authority to grant a writ of habeas corpus to a state prisoner. See 28 U.S.C. § 2254(b)(1)(A) (explaining that "[a]n application for a writ of habeas corpus . . . shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State"); see also Williams v. Taylor, 529 U.S. 362, 398–99 (2000) (describing 28 U.S.C. § 2254(d)(1) under the AEDPA, which

---

[4] The Court twice granted Petitioner extensions to file a Reply. (See Doc. Nos. 18, 20). The deadline for him to file his Reply was no later than February 15, 2022. (Doc. No. 20). The record, however, does not reflect that Petitioner ever filed a Reply.

4

governs "claims adjudicated on the merits[,]" as "a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners").

## A. Exhaustion

Before a federal court can grant an application for a writ of habeas corpus under 28 U.S.C. § 2254, a state prisoner "must [first] exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]").  The exhaustion requirement, grounded in principles of comity, ensures that the state courts have the first opportunity to consider a constitutional violation before a habeas petitioner presents it to a federal court. O'Sullivan, 526 U.S. at 845 ("This rule of comity reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance.") (internal quotation marks and citations omitted).  In this vein, a habeas petitioner must preserve a constitutional claim for federal habeas review by "fairly present[ing]" it to the state courts. Fulcher v. Motley, 444 F.3d 791, 798 (6th Cir. 2006) (internal quotation marks and citation omitted).

A constitutional claim is fairly presented when "the petitioner asserted both a factual and legal basis for his claim in state court." Id.  In addition, to fairly present a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. In Tennessee, presentation of a federal claim to the Court of Criminal Appeals—the state's intermediate appellate court—is sufficient to deem the claim exhausted under state law. See Tenn. S. Ct. R. 39 ("[A] claim presented to the Court of Criminal Appeals shall be considered exhausted

5

even when such claim is not renewed in the Supreme Court on automatic review."); see also Adams v. Holland, 330 F.3d 398, 402 (6th Cir. 2003) (noting that "Rule 39 clearly removed Tennessee Supreme Court review as an antecedent for habeas purposes").

### B. Adjudicated Claims

The AEDPA also limits a federal court's authority "to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams, 529 U.S. at 412. A federal court may issue a writ only if a state prisoner can show that the state court's adjudication of a claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2).

The phrases "contrary to" and "unreasonable application" under § 2254(d)(1) have different meanings. Williams, 529 U.S. at 365. "Contrary" to means "'diametrically different,' 'opposite in character or nature,' or mutually opposed.'" Id. at 405 (quoting Webster's Third New Int'l Dictionary 495 (1976)). A state court decision will be "contrary to" clearly established law in two scenarios. Id. In the first scenario, a state court decision is contrary to clearly established law if it applies "a rule that contradicts the governing law set forth in" Supreme-Court cases. Id.; see Yarborough v. Alvarado, 541 U.S. 652, 660–61 (2004) (explaining that clearly established law under § 2254(d)(1) "'refers to holdings, as opposed to the dicta, of this Court's decision as of the time of the relevant state-court decision'" (citations omitted)). Under the second scenario, a state-court decision is contrary to Supreme-Court precedent if it "confronts a set of facts that are materially indistinguishable from a decision of" the Supreme Court "and nevertheless arrives at a

result different[.]" Id. at 405. A state court's failure to cite Supreme-Court authority, however, does not necessarily mean that the state court's decision was "contrary to" clearly established federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme-Court precedent. Early v. Packer, 537 U.S. 3, 8 (2002).

A state-court decision is unreasonable under § 2254(d)(1) when it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case[.]" Williams, 529 U.S. at 407–08. "[A] federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was *objectively* unreasonable." Id. at 410 (emphasis added) (internal quotation marks omitted).

Both standards are highly deferential to a state court's rulings and "require[] heightened respect for state court . . . legal determinations." Herbert v. Billy, 160 F.3d 1131, 1134 (6th Cir. 1998); see Renico v. Lett, 559 U.S. 766, 777 (2010) ("AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."). In line with AEDPA deference, a federal court cannot issue a writ "simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams, 529 U.S. at 365. And as a condition for relief under § 2254(d), "a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The AEDPA, under § 2254(d)(2), likewise imposes a highly deferential standard for reviewing a state court's factual determinations. Burt v. Titlow, 571 U.S. 12, 18–19 (2013). A state court's factual determinations are presumed correct, and a habeas petitioner "has the burden

of rebutting the presumption of correctness by 'clear and convincing evidence.'" Rice v. Collins, 546 U.S. 333, 338–39 (2013) (quoting 28 U.S.C. § 2254(e)(1)).  A state court's factual findings are not unreasonable under § 2254(d)(2) simply because the federal court "would have reached a different conclusion." Wood v. Allen, 558 U.S. 290, 301 (2010) (citations omitted); see id. at 301 ("[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'") (citation omitted).

## III.  DISCUSSION

### A.  Ground One:  Ineffective Assistance of Counsel

Petitioner argues that his trial attorney rendered ineffective assistance of counsel under Strickland v. Washington 466 U.S. 668 (1984).  Before proceeding to the merits of Petitioner's ineffective-assistance-of-counsel claim, the Court will first consider whether he properly exhausted it.  See Johnson v. Bauman, 27 F.4th 384, 387 (6th Cir. 2022) ("Because exhaustion 'is a threshold question that must be resolved before' a court may grant habeas relief, Wagner v. Smith, 581 F.3d 410, 415 (6th Cir. 2009), that is where we begin[.]").

#### 1.  Exhaustion

The record shows, and Respondent does not dispute (Doc. No. 14 at 2), that Petitioner exhausted his ineffective-assistance-of-counsel claim because he "fairly presented" it to the state courts.  Fulcher, 444 F.3d at 798 (internal quotation marks and citation omitted).  As an initial matter, Petitioner, by all appearances, did not file a direct appeal of his 2017 conviction and sentence.  (See Doc. 13-1 at 13).  He need not do so, however, to satisfy the exhaustion requirement because "[c]laims not exhausted on direct appeal may be exhausted through a properly raised and

appealed application for post-conviction relief." Lovins v. Parker, 712 F.3d 283, 295 (6th Cir. 2013) (citation omitted).

Here, Petitioner fairly presented his ineffective-assistance-of-counsel claim because he "asserted both a factual and legal basis for his [Strickland] claim in state court" in his petition for post-conviction relief. Fulcher, 444 F.3d at 787; (see Doc. No. 13-1 at 18 (stating that counsel's "advice induced Petitioner into pleading guilty"); id. at 15–16 (arguing that counsel rendered ineffective assistance of counsel under Strickland)). Following the trial court's denial of his petition for post-conviction relief, Petitioner raised his ineffective-assistance-of-counsel claim on appeal to the TCCA, (see Doc. No. 13-4 at 12, 14–38), "thereby 'invoking one complete round of the state's established appellate review process,'" Lovins, 712 F.3d. at 295 (quoting O'Sullivan, 526 U.S. at 845). See Tenn. S. Ct. R. 39 ("[A] claim presented to the [Tennessee] Court of Criminal Appeals shall be considered exhausted even when such claim is not renewed in the Supreme Court[.]"). Petitioner, therefore, has exhausted his ineffective-assistance-of-counsel claim, and the Court will consider the merits of this claim under § 2254(d).

### 2. Analysis

The Sixth Amendment of the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. Const. amend. VI. The right to effective assistance of counsel applies "at critical stages of a criminal proceeding[,]" including the plea-bargaining process. Kennedy v. United States, 756 F.3d 492, 493 (6th Cir. 2014) (citing Montejo v. La., 556 U.S. 778, 776 (2009)); see Lafler v. Cooper, 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."); see also Kennedy, 756 F.3d at 493 (stating that "[t]hose critical stages include . . . postindictment plea negotiations" (citations omitted)).

9

Petitioner argues that his attorney's performance, "prior to and during the guilty plea," fell below the Sixth Amendment's guarantee of reasonably competent representation and that his attorney's performance also prejudiced him within the meaning of <u>Strickland</u>. (Doc. No. 2 at 9). The heart of his claim rests on his understanding of his plea agreement, as communicated to him through his attorney. Petitioner explains that, based on his attorney's "erroneous advice[,]" he accepted the State's plea with the understanding that he could later "file for a sentence reduction." (<u>Id</u>. at 11, 25 (Petitioner's Aff.)). Petitioner claims that had his attorney "correctly advised" him that he could not file for a sentence reduction, "he would not have accepted the guilty plea[] and would have insisted on going to trial." (<u>Id</u>. at 6). According to Petitioner, his attorney's performance was deficient under <u>Strickland</u> because his attorney "had no valid or legitimate reason to allow" him "to believe that he could subsequently file a motion for a sentence reduction, after he pleaded guilty[.]" (<u>Id</u>. at 10). Petitioner also asserts that counsel's error, <u>i.e.</u>, his "erroneous advice[,]" also "clearly prejudiced" him under <u>Strickland</u> because he "entered an unintelligent, unknowing, and involuntary guilty plea[.]" (<u>Id</u>. at 11 ).

Respondent argues that the TCCA's decision was reasonable because, based on the state record, it properly concluded that Petitioner failed to show deficient performance or prejudice under <u>Strickland</u>. In support of its argument, Respondent highlights portions of testimony from Petitioner's plea colloquy and post-conviction hearing. Respondent states that Petitioner acknowledged the finality of his plea during the plea colloquy. (Doc. No. 14 at 16). At the post-conviction hearing, Petitioner's counsel testified that whether he told Petitioner that he could file a motion for a sentence reduction "sound[ed] unusual to him" because counsel stated that he understood the finality of a plea. (<u>Id</u>. (citing Doc. No. 13-2)). Based on the record, Respondent maintains that Petitioner had not proven that his attorney was deficient under <u>Strickland</u>. (<u>Id</u>. at

17). "Any prejudice from plea counsel's alleged deficiency," Respondent also argues, "was completely mitigated by the trial court's warnings and instructions to Petitioner on the waiver of his rights." (Id.). "Because the state-court decision is not lacking in justification, nor was there an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement," Respondent maintains that Petitioner is not entitled to relief. (Id. at 17–18).

Strickland governs Petitioner's ineffective-assistance-of-counsel claim and is clearly established law for purposes of review under § 2254(d). Hill v. Lockhart, 474 U.S. 52, 59 (1985) ("[T]he two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel.); see Magana v. Hofbauer, 263 F.3d 542, 547 (6th Cir. 2001) ("The Strickland analysis also applies to claims of ineffective assistance of counsel involving counsel's advice during the plea process.") (citing id. at 58)). To establish that counsel was ineffective under Strickland, 466 U.S. at 668, a defendant must satisfy a two-part test. Id. at 687. First, the defendant must show that counsel's performance was deficient by "identify[ing] the acts or omissions . . . that are alleged not have been the result of reasonable professional judgment." Id. at 690. Second, a defendant must show that counsel's "deficient performance prejudiced the defense." Id. at 687. To satisfy the prejudice component, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

The proper measure of counsel's performance is whether counsel's alleged errors "fell below an objective standard or reasonableness" under prevailing professional norms. Id. at 687–88. The Strickland Court, however, stopped short of establishing a checklist for evaluating the reasonableness of attorney performance, because "[t]here are countless ways to provide effective assistance of counsel in any given case." Id. at 689. A court, rather, must judge the reasonableness

of counsel's challenged conduct on the facts and circumstances of the case and based on counsel's perspective at the time. Id. at 688, 690.

In this vein, judicial scrutiny is highly deferential to counsel's performance and "doubly" so when, as here, a court applies the standards under Strickland and § 2254(d) in tandem. Burt, 571 U.S. at 15 (explaining that AEDPA and Strickland "do not permit federal judges to so casually second-guess the decisions of their state-court colleagues or defense attorneys"). In addition, because the Strickland standard is a general one, the range of reasonableness is substantial, meaning "the greater the potential for reasoned disagreement among fair-minded judges" and "the more leeway [state] courts have in reaching outcomes in case-by-case determinations." Renico, 559 U.S. at 776 (internal quotation marks and citations omitted).

The TCCA summarized the evidence during Petitioner's post-conviction hearing as follows:

> At the post-conviction hearing, the parties presented the following evidence: The Petitioner's mother, Hattie Simmons testified that she attended the Petitioner's guilty plea hearing. She recalled meeting with Counsel [Mr. McGregor] after the hearing. About the meeting she stated:
>
>> We had several questions after the plea, and that was one of our questions, if he could possibly go and ask for a sentence reduction and we were told that he could, you know, that he could file motions. [Counsel] made it clear that, after his plea, that his portion of it was done, of dealing with the case was done, but he did say that we could file motions or [the Petitioner] rather could file motions to get a sentence reduction.
>
> Counsel testified that, at the time he was appointed in December 2016, the Petitioner's trial was set for the end of March. Counsel recalled that a big issue for the Petitioner was that he claimed that his co-defendant, Mr. Smith, shot the victim [Mr. Diaz] while Mr. Smith claimed the Petitioner shot the victim [Mr. Diaz]. Counsel said that after speaking with the State, he concluded that whether the

12

Petitioner actually pulled the trigger on the gun was not significant in light of the evidence that would support a conviction for a felony murder based upon the robbery. The only difference between the Petitioner's account of the events and the State's theory of the case was the identity of the shooter.

Counsel testified that he was aware that Quadricus Grey, a person the Petitioner had identified as a potential witness, was an inmate housed with Mr. Smith at some point. Mr. Grey wrote a letter stating that Mr. Smith, "had bragged about killing [the victim] or had spoken about killing him and that it was [the Petitioner]." Counsel contacted Mr. Grey's attorney, and the attorney consented to Counsel's giving the letter to the State but informed Counsel that Mr. Grey would not be willing to speak with him or testify. Counsel provided the letter to the State, and the State declined to alter its offer for settlement because both Mr. Smith and the Petitioner were criminally responsible for [] [Mr. Diaz]'s death regardless of who fired the gun. Nonetheless, Counsel still attempted to negotiate a settlement with the State.

Counsel confirmed that the Petitioner was serving a probation sentence at the time he committed the offense. Counsel recalled that the Petitioner initially rejected the State's offer to settle the case if the Petitioner pleaded guilty to second degree murder with a forty-year sentence at 100%. Counsel met with the Petitioner in jail several days before the guilty plea hearing. Counsel first reviewed the guilty plea with the Petitioner and then arranged for a phone call with the Petitioner's family so that the Petitioner could discuss the possibility of a guilty plea with them. Counsel described the Petitioner as "on the fence" about entering a guilty plea. Counsel left the room to allow the Petitioner a private discussion with his family. Later the same day, Counsel again spoke with the Petitioner about pleading guilty and the Petitioner told Counsel to pursue a plea agreement with the State. Counsel recalled that the Petitioner appeared "comfortable" with the idea of pleading guilty. Counsel said that he negotiated with the State until the morning of the plea.

Counsel testified that he did not recall discussing sentencing reduction with the Petitioner. He stated that, based upon his interactions with the Petitioner's mother, he had no reason to believe her testimony was dishonest but that her testimony about sentence reduction sounded "unusual just because [he] knew the finality of a plea." He confirmed that he spoke with the Petitioner about post-conviction relief but was unsure whether he discussed possible habeas corpus relief.

On cross-examination, Counsel agreed that there was "a plethora of evidence" against the Petitioner in this case including: surveillance video, phone records, GPS data, witness accounts, and possession of the victim's belongings. Counsel recalled that the police spoke with Tanisha Mance's father. Tanisha Mance was the Petitioner's girlfriend, and the Petitioner sought advice from Mr. Mance because Mr. Mance had "been through the system." Mr. Mance reported to the police that the Petitioner had disclosed that a "Hispanic guy pulled a gun on" Mr. Smith, so the Petitioner shot the "Hispanic guy." Counsel agreed that the autopsy results confirmed that the victim was shot in the head. Counsel agreed that Mr. Smith's account of how the victim [Mr. Diaz] was shot was more consistent with the medical findings than the Petitioner's account.[5]

Counsel testified that on the day of the guilty plea hearing[,] the Petitioner said that he did not want to plead guilty. Counsel, recognizing that the decision to plead guilty was "big," and not "complete[ly] shock[ed]" by the Petitioner's statement. Counsel said he reviewed the proof in the case with the Petitioner and the likely outcome at trial. He expressed concerned about the Petitioner's police interview and how that could affect the outcome at trial. He also discussed with the Petitioner the benefits of the State's offer to settle the case. Counsel also spoke with the Petitioner's family and conveyed to them that the Petitioner wanted to proceed to trial, and he recalled that the Petitioner's family had "a negative reaction to it." Family members wrote a note to the Petitioner encouraging him to plead guilty. Counsel gave the note to the Petitioner, and, after considering the note from his family, the Petitioner agreed to plead guilty.

Simmons, 2020 WL 2844526 at *2–3.

The Petitioner testified that he was twenty-one years old at the time of the guilty plea hearing. The Petitioner agreed that Counsel talked with him about the charges and evidence against him and the State's offer for settlement. The Petitioner confirmed that he was "very adamant" from the beginning that he was not the shooter. He further affirmed Counsel's testimony about their meetings leading up to the guilty plea. He clarified, however, that he did "not make up [his]

---

[5] The State provided a summary of the evidence during the guilty plea hearing. (Doc. 13-3 at 20–23). Based on the State's evidence, the victim, Mr. Diaz, was sitting in the driver's seat of his Hummer, and Petitioner sat in the back seat directly behind Mr. Diaz. The State also stated that the Petitioner "reached over from the back seat and shot" Mr. Diaz twice in the neck. (Id. at 21). Petitioner agreed with the State's summary of the evidence during the plea hearing, stating that it was "true and correct." (Id. at 24:22–25).

14

mind until the day of [the guilty plea hearing]." He stated that he remained uncertain about whether to plead guilty after Counsel met with him at the jail, and he did not fully decide to plead guilty until the day of the guilty plea hearing.

The Petitioner testified that he told Counsel that he would rather "take [his] chances at trial." He explained that there was not much difference between a life sentence and forty years. Further he did not understand what it meant to plead "out-of-range." The Petitioner said that he asked Counsel about his sentencing range and confirmed that he also asked the trial court about the sentencing range during the plea colloquy. The Petitioner recalled that, after he signed a rejection of the State's offer, Counsel took the rejection to the State's attorney. An hour later, Counsel returned with a letter from the Petitioner's family. The Petitioner said that Counsel told him that the State's offer was "the better option." The Petitioner also recalled Counsel telling him that the Petitioner "could file a habeas corpus and, when [the Petitioner] asked what that was, [Counsel] told [the Petitioner] that it was a motion ... for a sentence reduction." The Petitioner said that it was this conversation that "swayed" him to accept the State's offer. Based upon this advice, the Petitioner believed he "would be able to get out sooner."

<u>Simmons</u>, 2020 WL 2844526 at *3–4.

The trial court correctly identified the standards under <u>Strickland</u>. (Doc. No. 13-1 at 37–39). It also summarized Petitioner's allegations and the evidence from Petitioner's post-conviction hearing as follows:

Petitioner alleges he would not have taken the plea if he had known he was not eligible to file for a sentence reduction at a later date. At the hearing, he further alleged he did not understand why he had pled to a Range II sentence when he was a Range I offender. Despite Petitioner's allegations, the transcript of the guilty plea shows reflects [sic] Petitioner made specific inquiry into his <u>Hicks</u> [plea] and a discussion with the court ensued, culminating in Petitioner stating he had no more questions about that issue. During this discussion, the court informed Petitioner he would be pleading to "40 years at 100 percent on several different occasions." There was no discussion of any sort regarding his eligibility for a future reduction in sentence and Petitioner did not make any inquiry into the matter. Later in the plea colloquy the court asked Petitioner if he understood that the court's acceptance of his guilty plea would end his case once and for all to which Petitioner responded in the

15

affirmative. Further, Petitioner's attorney has testified that he had no memory of discussing any sort of motion to reduce Petitioner's sentence after his judgment became final. The only reference on this issue was the good and honor time credit that Petitioner could earn to reduce his sentence up to fifteen percent.

(Id. at 39–40).

Based on the evidence, the trial court concluded that "Petitioner was fully informed of the nature and consequences of his plea." (Id. at 40).

The TCCA also correctly identified the standards set forth in Strickland and reasoned that the evidence supported the trial court's denial of Petitioner's ineffective-assistance-of-counsel claim:

> When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90[.]
>
> If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that there "is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

16

> The evidence supports the post-conviction court's denial of relief. The transcript of the guilty plea hearing shows that the Petitioner inquired about his range of sentence, and the trial court explained why the Petitioner was to be sentenced as a Range II offender rather than a Range I offender. The trial court clearly reviewed the Petitioner's rights with him and his sentence. The Petitioner acknowledged the finality of a plea and entered a plea of guilty . . . . Moreover, Counsel testified that he did not recall discussing a motion to reduce the Petitioner's sentence with him and that he thought that such a discussion would be "unusual" given his understanding of the finality of a plea.

Simmons, 2020 WL 2844526 at **6–7.

Petitioner cites the standards under the AEDPA. (Doc. No. 2 at 7–9). However, he does not apply them to the TCCA's decision. In any event, Petitioner has not shown that the TCCA's denial of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

"[A] plea cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Henderson v. Morgan, 426 U.S. 637, 644–45 (1976). When a defendant "is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Lockhart, 474 U.S. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). In applying Strickland in the guilty-plea context, the Sixth Circuit has recognized that a "state trial court's proper colloquy can be said to have cured any misunderstanding" a defendant "may have had about the consequences of his plea." Ramos v. Rogers, 170 F.3d 560, 565 (6th Cir. 1999); see Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) ("[W]hile the principles of 'clearly established law' are to be determined solely by resort to

17

Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue.").

Here, Petitioner, by all appearances, does not dispute that the trial court's plea colloquy was proper. And the trial judge's explanation to Petitioner that he would serve a forty-year sentence "at 100 percent" should have cured any confusion Petitioner may have had about whether he could file a motion for a reduction in sentence. (Doc. 13-3 at 9:1–2, 12:21–24). The transcript of Petitioner's plea colloquy also shows that the trial judge answered Petitioner's questions regarding his plea, which again, would suggest that the trial judge cured any confusion Petitioner may have had about his plea agreement. (Id. at 8:2–5). Petitioner, for instance, explained to the trial judge that he did not fully understand the "actual concept" of his plea under Hicks and the meaning of "out of range." (Id. at 8:8–9; id. at 10:11–12). The trial judge explained Hicks to Petitioner, stating, in relevant part, that, "As part of this agreement, you're agreeing to accept a range 2 punishment of 40 years," even though Petitioner qualified as a Range I offender. (Id. at 9:13–16). "[T]he out of range is the 40 years," the trial judge explained. (Id. at 10:13–25). Petitioner stated, "That was my only question." (Id. at 11:1). When the trial judge asked him if he had any additional questions, Petitioner responded, "No," and he confirmed that he still intended to "go forward" with his plea. (Id. at 11:1–10). The trial judge explained Petitioner's guilty plea a second time, asked Petitioner again if he had any questions, and informed Petitioner of the finality of his plea:

> The Court: I understand you're going to be pleading guilty to second degree murder. You're going to be sentenced to 40 years at 100 percent as a violent offender[.] [T]hat sentence is going to be imposed under the provisions of State v[.] Hicks, which we already discussed[.] [I]s that your understanding, sir, of what you're pleading to as well as the actual punishment being imposed?
>
> Petitioner: Yes, sir.

18

| The Court: | Do you have any questions at all regarding what you're charged with, the possible punishment related to those offenses or what you're pleading to and the actual punishment imposed?" |
|---|---|
| Petitioner: | No, Sir. |

(Id. at 12:21–25, 13:1–9).

| The Court: | [D]o . . . you understand that if I accept your plea[]of guilty here today that this will end your case in the courts once and for all, there will be no further plea discussions, no jury trial, sentencing hearing, appeals or anything else, this will be your final appearance in court? |
|---|---|
| Petitioner: | Yes, sir. |

(Id. at 18:21–25).

In addition, as the TCCA recognized, Petitioner's testimony during his plea colloquy "'constitute[s] a formidable barrier'" for him because his "'[s]olemn declarations in open court carry a strong presumption of verity.'" Simmons, 2020 WL 2844526 at *7 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)); see Marks v. Davis, 504 F. App'x 383, 386 (6th Cir. 2012) (noting that a "plea transcript itself carries great weight" (citing Blackledge, 431 U.S. at 73–74)). And Petitioner's statements under oath during the plea colloquy belie his assertion that his attorney's "erroneous advice" induced him into pleading guilty. (Doc. No. 2 at 11). During his plea colloquy, Petitioner confirmed that, before signing his petition to plead guilty, he had the opportunity to either read the petition in its entirety or have his attorney read it to him. (Doc. No. 13-3 at 7:13–17). He also stated that his attorney explained the law to him in his case, the facts and circumstances leading up to his arrest, and the evidence the State had against him. (Id. at 13). He further acknowledged that his attorney satisfactorily answered his questions, and he denied that he had any complaints about his attorney. (Id. at 7:18–23). When the trial judge asked Petitioner if he was entering a plea of guilty "freely and knowingly and voluntarily," Petitioner unequivocally responded in the affirmative. (Id. at 19:22–25, 20:1–4). None of Petitioner's statements during

19

his plea colloquy, therefore, even hint that he relied on erroneous advice from his attorney or that his attorney induced him into pleading guilty. See Stevens v. Berghuis, No. 2:10-CV-13978, 2012 WL 5990215, at *9 (E.D. Mich. Nov. 30, 2012) ("There is no evidence that counsel strong-armed Petitioner or used coercive tactics to get him to accept the plea."); Marks v. Davis, No. 2:08-CV-13710, 2010 WL 11519612, at *6 (E.D. Mich. Aug. 5, 2010) (determining that the petitioner failed to establish deficient performance under Strickland because his "claim that counsel coerced him into pleading guilty [wa]s refuted by his own sworn testimony at the plea hearing"). And although Petitioner insists that his attorney "induce[d]" him into pleading guilty, (Doc. No. 2 at 13), this conclusory allegation is inadequate to show that his attorney was deficient under Strickland. (Doc. No. 2 at 11); see Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998) (recognizing that conclusory allegations, without evidentiary support, cannot provide a basis for habeas relief).

Even if Petitioner could show his attorney's alleged errors were deficient under Strickland, he cannot show that his attorney prejudiced him. In the guilty-plea context, a defendant must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Thirkield v. Pitcher, 199 F. Supp. 2d 637, 654 (E.D. Mich. 2002) (citing Lockhart, 575 U.S. 52, 58–59). When, as here, a petitioner argues "that counsel's deficient performance led him to accept a guilty plea rather than go to trial," the court, "do[e]s not ask whether, had he gone to trial, [would] the result of that trial . . . been different than the result of the plea bargain." Lee v. United States, 582 U.S. 357, 364 (2017) (internal quotation marks omitted). The question, rather, is whether counsel's alleged error was one that affected a petitioner's "understanding of the consequences of pleading guilty." Id. at 366. In making this inquiry, courts must be mindful that they "should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's

20

deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Id. at 369.

In applying these standards, a petitioner satisfies Strickland's prejudice prong when his claim "is backed by substantial and uncontroverted evidence" in the record. Id. at 371 ("[P]etitioner's claim that he would not have accepted a plea had he known it would lead to deportation is backed by substantial and uncontroverted evidence."). Here, no contemporaneous evidence exists in the record to substantiate Petitioner's assertion that, but for his attorney's "erroneous advice[,]" he would not have pleaded guilty and would have, instead, insisted on going to trial. (Doc. No. 2 at 11). None of Petitioner's statements during his plea colloquy suggested that filing a motion for a sentence reduction was of any importance to him or, for the reasons this Court already explained, that his plea was otherwise involuntary. Cf. Lee, 582 U.S. at 369–70 (finding that "[t]here [wa]s no reason to doubt the paramount importance" the petitioner placed "on avoiding deportation" when he unequivocally told the trial judge during his plea colloquy that deportation affected his decision to plead guilty). And his post hoc assertion that he would not have pleaded guilty but for his attorney's erroneous advice is simply insufficient to establish prejudice under Strickland. Id. at 369.

Based on the evidence before it, the TCCA could have reasonably concluded that Petitioner was not denied effective assistance of counsel based on his attorney's "erroneous advice[.]" (Doc. No. 2 at 11). The TCCA's adjudication of Petitioner's claim was neither "contrary to" nor an "unreasonable application" of Strickland. 28 U.S.C. §§ 2254(d)(1)–(2).

**B. Ground 2: Due Process**

Petitioner, citing the Supreme Court's decisions in Boykin v. Alabama, 395 U.S. 238 (1969) and Brady v. United States, 397 U.S. 742, 748 (1970), claims that his guilty plea was

21

unknowing and involuntary, in violation of his due-process rights. (Doc. No. 2 at 12–13). In response, Respondent argues that Petitioner's "independent claim that his guilty plea was involuntary" is procedurally defaulted because he raises it for the first time before this Court, and he no longer has a state-court remedy to pursue this claim under Tennessee law. (Doc. No. 14 at 1, 18). For this reason, Respondent states that his claim is barred from this Court's review. (Id. at 18).

The procedural-default doctrine, like the exhaustion doctrine, is grounded in principles of comity. Davila v. Davis, 582 U.S. 521, 527–28 (2017) ("The procedural default doctrine . . . advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine.") (citation omitted). A federal court, therefore, may not review a federal claim that was procedurally defaulted in state court. Id. at 527 ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address the merits of those claims in the first instance."). If a petitioner never presented a claim to the state courts and a state-court remedy is no longer available, e.g., such as when an applicable statute of limitations bars a claim, the claim is technically exhausted but is still barred by procedural default. Coleman v. Thompson, 501 U.S. 722, 731–32 (1991). A petitioner may overcome procedural default if he can show (1) "cause" to excuse his failure to comply with the state procedural rule and (2) "actual prejudice resulting from the alleged constitutional violation." Davila, 582 U.S. at 528 (internal quotation marks and citations omitted).

The Court agrees with Respondent that Petitioner's independent due-process claim is procedurally defaulted. First, Petitioner neither raised a stand-alone due process claim in his petition for post-conviction relief, (see Doc. No. 13-1 at 12–21), nor in his brief on appeal to the

22

TCCA, (see Doc. No. 13-4 at 12 (identifying issues for review on appeal)).  See Covington v. Mills, 110 F. App'x 663, 666 (6th Cir. 2004) (finding that habeas petitioner procedurally defaulted his claims when he failed to raise them "anywhere in the brief to the Tennessee Court of Criminal Appeals").  He only claimed that his guilty plea was involuntary within the context of his ineffective-assistance-of-counsel claim.  In addition, Tennessee's one-year statute of limitations and "one-petition" rule on post-conviction petitions generally prevent a petitioner from returning to state court to litigate any additional constitutional claims.  See Tenn. Code. Ann. § 40-30-102(a) ("[A] person in custody under a sentence of a court of this state must petition for post-conviction relief . . . within one (1) year of the date of the final action of the highest state appellate court[.]"); Id. § 40-30-102(c) ("In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment.").  In addition, Petitioner advances no argument for excusing procedural default.[6]  Because Petitioner, therefore, failed to present his due-process claim to the state courts, and state-court remedies are no longer available on this claim, it is procedurally defaulted.  Cf. Hodges v. Colson, 727 F.3d 517, 540 (6th Cir. 2013) ("Hodges failed to present his claim of incompetence at trial to the state courts, and he no longer has any state court remedies to exhaust . . . . The claim is therefore procedurally defaulted.").

Even if Petitioner's due-process claim was not procedurally defaulted, it fails on the merits.  "[I]f a defendant's guilty plea is not . . . voluntary and knowing, it has been obtained in violation of due process and is therefore void."  Boykin, 395 U.S. at 249 n.5.  In Boykin, the Supreme Court held that "[i]t was error, plain on the face of the record, for the trial judge to accept a petitioner's

---

[6] Petitioner references procedural default in the table-of-contents section of his memoranda. (Doc. No. 2 at 2 ("IX. QUESTION OF PROCEDURAL DEFAULT"; Doc. No. 8 at 28; Doc. No. 10 at 2).  However, he advances no substantive argument on procedural default elsewhere in his memoranda (see id.).

guilty plea without an affirmative showing that it was intelligent and voluntary." In <u>Brady</u>, 387 U.S. at 743–44, the Supreme Court determined that a petitioner's guilty plea was voluntarily and intelligently made when "the trial judge twice questioned him as to the voluntariness of his plea." <u>Id</u>. Here, the record shows that, unlike <u>Boykin</u>, the trial judge, during the plea colloquy, accepted Petitioner's guilty plea after an affirmative showing that his plea was intelligent and voluntary. (<u>See</u> Doc. No. 13-3 at 19–20). Again, Petitioner's post hoc assertion that his guilty plea was not knowing and voluntary simply cannot be reconciled with his statements during the plea colloquy. <u>See</u> <u>Marks</u>, 504 F. App'x at 386 ("[T]he plea transcript itself carries great weight."); <u>see</u> <u>also</u> <u>Ramos</u>, 170 F.3d at 566 ("If we were to rely on [the petitioner]'s alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy (which he now argues were untruthful) indicating the opposite."). In sum, Petitioner is not entitled to relief under § 2254 for his due-process claim because it is procedurally defaulted, and in the alternative, it is without merit.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner is not entitled to relief under 28 U.S.C. § 2254. His petition for a writ of habeas corpus (Doc. No. 1) is therefore denied, and this action is dismissed. An appropriate judgment order will follow.

The Court must consider whether to issue a certificate of appealability ("COA") because it entered a final adverse ruling to Petitioner. Rule 11(a) of the Rules Governing § 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). A petitioner may not file an

appeal unless the Court issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition could have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327, 336 (2003) (citations and internal quotation marks omitted). When a district court rejects a constitutional claim on the merits, a petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a district court rejects a claim on procedural grounds, a COA should issue when the petitioner shows that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Id.

Reasonable jurists would not debate whether the Court should have resolved Petitioner's ineffective-assistance-of-counsel and due-process claims differently or that these claims "presented are adequate to deserve encouragement to proceed further." Miller, 537 U.S. at 336 (citing Slack, 529 U.S. at 484). Accordingly, a COA shall not issue. The Court also certifies that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE